**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COLLECTIVE LIABILITY INSURANCE COOPERATIVE, as Subrogee of J. STERLING MORTON HIGH SCHOOL DISTRICT 201, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-cv-13078 |
| v. | ) ) | Hon. John F. Kness |
| WESTPORT INSURANCE CORPORATION, as Successor-in-Interest to COREGIS INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

## WESTPORT INSURANCE CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant Westport Insurance Corporation, as Successor-in-Interest to Coregis Insurance Company ("Westport"), by and through its undersigned counsel, answering the Complaint of the Collective Liability Insurance Cooperative ("CLIC"), as subrogee of J. Sterling Morton High School District 201 ("District 201"), states as follows:

### COUNT I
#### (BREACHED DUTY TO INDEMNIFY)

1.      CLIC is a cooperative organization organized under the laws of the State of Illinois with its principal place of business in Illinois. CLIC is a member-driven insurance pool that utilizes risk sharing and excess insurance to provide a comprehensive, cost-effective, school-specific risk management program for its member Illinois school districts.

**ANSWER**:  Upon information and belief, admitted.

2.      J. Sterling High School District 201 ("District 201") is a named member of CLIC at all times herein relevant.

**ANSWER**:  Upon information and belief, admitted.

3.      Westport is a Missouri insurance company authorized to do business in Illinois.

**ANSWER**:  Admitted.

4.      On information and belief, Coregis Insurance Company ("Coregis") was an insurance company authorized to do business in Illinois and is now administered by Westport.

**ANSWER**:  Admitted.

5.      CLIC purchased insurance policy number 651-007479 Coregis which policy [*sic*] was in effect from July 1, 2001, to July 1, 2002. The policy is subject to a $1,000,000 limit excess over a $300,000 Self-Insured Retention ("SIR") on a per occurrence basis. A copy of the Coregis policy is attached as Exhibit A.

**ANSWER**:   Westport admits that CLIC purchased Policy No. 651-007479 from Coregis for the policy period July 1, 2001, to July 1, 2002.  Westport further admits that, subject to its complete terms and conditions, the Policy provides commercial general liability coverage with limits of $1,000,000 Each Occurrence and $3,000,000 General Aggregate in excess of a $300,000 Each Occurrence "Self-Insured Retention."  Westport denies that Exhibit A is a copy of the Policy in effect from July 1, 2001 to July 1, 2002.

6.      District 201 was named as a defendant in a civil suit filed by Jane Doe in the Circuit Court of Cook County under case number 21 L 6363, a copy of the second amended Doe complaint is attached as Exhibit B.

**ANSWER**:   Westport admits that District 201 was named in the above civil lawsuit on February 1, 2023, when Jane Doe filed her First Amended Complaint, and that counsel for District 201 filed their appearance on April 18, 2023.  Westport further admits that Exhibit B is a copy of Jane Doe's Second Amended Complaint filed October 16, 2023.

7.      The second amended Doe complaint alleged that District 201's acts or omissions in supervision of a former employee in the spring of 2002 caused and/or otherwise contributed to that employee being able to groom and sexually abuse Doe while employed by another school district.

**ANSWER**:   Westport admits that Jane Doe's Second Amended Complaint speaks for itself and denies any allegations in Paragraph 7 inconsistent therewith.  Westport further denies

2

that all relevant allegations of the Second Amended Complaint are paraphrased in Paragraph 7 above.

8.      District 201, through CLIC and its third-party administrator gave timely notice of the Doe complaint.

**ANSWER**:    Denied as to Westport, which was first given notice of Jane Doe's lawsuit on September 26, 2024.  With respect to third parties, Westport lacks information or knowledge sufficient to form a belief as to the allegations and characterizations in Paragraph 8 and therefore denies the same.

9.      CLIC proceeded to fund District 201's defense.

**ANSWER**:    Upon information and belief,  Westport admits that that CLIC began or "proceeded to fund District 201's defense" of Jane Doe's lawsuit on or about February 1, 2023, when Jane Doe filed her First Amended Complaint.  Upon information and belief, Westport further admits that CLIC continued to fund District 201's defense after Westport was given notice of Jane Doe's Second Amended Complaint on September 26, 2024.  .

10.     CLIC expended a total of $189,000 in defending District 201 in the second amended Doe complaint.

**ANSWER**:  Denied.  Upon information and belief, Westport admits that CLIC expended a total of $189,000 in defending District 201 from Jane Doe's lawsuit, including the First Amended Complaint and the Second Amended Complaint.

11.     The second amended Doe complaint was settled as to District 201 for $400,000.

**ANSWER**:  Denied.  Upon information and belief, Westport admits that Jane Doe's lawsuit was settled as to District 201 for $400,000 on or about December 5, 2024 and that the Second Amended Complaint was the operative pleading at that time.

12.     CLIC fully funded the settlement.

**ANSWER**:  Upon information and belief, admitted.

13.     The total incurred in defense and indemnity of District 201 for the second amended Doe complaint was $589,000.

**ANSWER**:  Denied.

14.     The total defense and indemnity paid by CLIC on behalf of District 201 exceeds the applicable SIR by $289,000.

**ANSWER**:  Westport admits that the $589,000 allegedly paid by CLIC to defend and settle Jane Doe's lawsuit exceeds $300,000 by $289,000.  Westport denies the remaining allegations and characterizations in Paragraph 14, including that CLIC or District 201 is entitled to coverage under the Policy for any loss, cost, or expense incurred in connection with Jane Doe's lawsuit or that any such loss, cost, or expense would erode or exhaust the Policy's $300,000 Each Occurrence SIR.

15.     Westport/Coregis is obligated to reimburse CLIC the amount due over the applicable SIR.

**ANSWER**:  Denied.

16.     Westport/Coregis declined to comply with its indemnity obligations as required under policy number 651-007479.

**ANSWER**:  Denied.

17.     Westport/Coregis is in breach of its duty to indemnify CLIC for costs incurred in excess of the SIR.

**ANSWER**:  Denied.

18.     Westport/Coregis did not reserve any rights and did not otherwise take any position with respect to its coverage obligations to District 201 and/or CLIC with respect to the second amended Doe complaint.

**ANSWER**:  Denied.

19.     There exists an actual controversy among the parties concerning their respective rights, duties, and obligations under the Coregis policy.

**ANSWER**:  Admitted.

20.     Under the terms of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, this Honorable Court is vested with the power to declare the rights and liabilities of the parties hereto under the terms and provisions of said policy of insurance, to adjudicate the final rights of all parties thereunder, and to give such other and further relief as may be necessary to enforce the same.

**ANSWER**: Denied.  Westport admits that this Court has jurisdiction to declare the parties'

rights and obligations under the Policy pursuant to the Declaratory Judgment Act, 28 U.S.C. §

2201-2202.  Westport further admits that this Court has jurisdiction over this action under 28

U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

WHEREFORE, Plaintiff, COLLECTIVE LIABILITY INSURANCE COOPERATIVE, as Subrogee of J. STERLING MORTON HIGH SCHOOL DISTRICT 201, prays for a declaratory judgment finding that Westport, as successor in interest to Coregis, is obligated under policy number 651-007479 to indemnify CLIC in the amount of $289,000 which is the amount in excess of the applicable SIR, enter judgment in its favor and against defendant WESTPORT INSURANCE CORPORATION, as Successor in Interest to COREGIS INSURANCE COMPANY, and for such other relief as this Court deems just and proper.

**ANSWER:**  Westport denies the allegations and characterizations in the above prayer for

relief and further denies that Plaintiff is entitled to any relief from Westport.

## COUNT II – VIOLATION OF 215 ILCS 5/155

21.     CLIC incorporates by reference Paragraphs 1 through 18 of Count I as this paragraph 21 of Count II as though fully set forth herein.

**ANSWER**: Westport incorporates by reference and re-alleges each of its answers to

Paragraphs 1 through 18 of CLIC's Complaint as though fully restated and realleged herein in their

entirety.

22.     215 ILCS 5/155 states:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable

attorney fees, other costs, plus an amount not to exceed any one of the
following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled
    to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is
    entitled to recover, exclusive of costs, over the amount, if any, which
    the company offered to pay in settlement of the claim prior to the action.

**ANSWER:** Admitted. Westport denies that CLIC is entitled to any relief from Westport

under 215 ILCS 5/155 or otherwise.

23.    At all times herein relevant, Westport placed its financial interests ahead of those
of its insured.

**ANSWER:** Denied.

24.    Westport issued no coverage position and otherwise reserved no rights with respect
to the second amended Doe complaint.

**ANSWER:** Denied.

25.    Westport did not participate in any settlement discussions or in any way come to
the assistance of CLIC or District 201 despite the very real possibility that the applicable SIR
would be exhausted.

**ANSWER:** Westport admits that it did not participate in any settlement discussions, but

denies that it was ever advised of such discussions or would have had a duty to participate in such

discussions. Westport denies the remaining allegations and characterizations in Paragraph 25,

including that Westport breached any duty under the Policy or applicable law.

26.    Westport instead abandoned its insured, requiring CLIC to fully fund a settlement
that exceeded the applicable SIR by $289,000.

**ANSWER:** Denied.

27.    Westport denied requests for reimbursement of same.

**ANSWER:** Westport admits that it refused to reimburse CLIC or District 201 after the settlement was first reported to Westport on or about June 6, 2025.

28.     At no time did Westport seek to preserve any coverage defenses by initiating a declaratory judgment action to confirm any coverage position it may have had.

**ANSWER:** Westport admits it did not initiate a declaratory judgment action after denying coverage in January 2025, by which time CLIC had already settled the underlying lawsuit. Westport denies the remaining allegations and characterizations in Paragraph 28, including that Westport is estopped from asserting any coverage defense in this action.

29.     Westport's recalcitrance instead required CLIC to initiate litigation to recover costs owed to it under the plain and unambiguous terms of the Coregis policy.

**ANSWER:** Denied.

30.     Westport's conduct was intended to benefit only Westport to the detriment of CLIC.

**ANSWER:** Denied.

31.     Westport's acts constitute vexatious and unreasonable conduct by an insurer.

**ANSWER:** Denied.

32.     CLIC is entitled to an award of sanctions under 215 ILCS 5/155.

**ANSWER:** Denied.

WHEREFORE, Plaintiff, COLLECTIVE LIABILITY INSURANCE COOPERATIVE, as Subrogee of J. STERLING MORTON HIGH SCHOOL DISTRICT 201, respectfully requests that this Honorable Court enter judgment in its favor, and against Defendant, WESTPORT INSURANCE CORPORATION, as Successor in Interest to COREGIS INSURANCE COMPANY, as to Count II of the Complaint, and grant the following relief:

      A.  Any and all damages available under 215 ILCS 5/155;

      B.  Pre-judgment interest;

      C.  Attorneys' fees incurred in prosecuting this action;

      D. Costs of suit; and

      E.  For such other and further relief this Court deems reasonable and just.

**ANSWER:**  Westport denies the allegations and characterizations in the above prayer for relief and further denies that Plaintiff is entitled to any relief from Westport.

## GENERAL DENIAL

Each and every allegation not specifically admitted herein is denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (No "Occurrence" / Abuse During the Policy Period)

1.     The Policy provides indemnity for "all sums in excess of the 'Self Insured Retention' . . . that any 'Insured' becomes legally obligated to pay as damages because of 'Bodily Injury' . . . caused by an 'Occurrence' to which this coverage applies," and states that "coverage applies only if the 'Occurrence' or offense occurs during the policy period and within the Policy Territory[.]"  "Bodily Injury" includes "bodily injury . . . mental injury, and humiliation."  "Occurrence" is defined as "an accident caused by a 'Covered Cause of Loss', including continuous or repeated exposure to substantially the same general harmful conditions."

In her Second Amended Complaint, Jane Doe alleges that:

- In Spring 2002 (during the 2001-2002 period), District 201 learned that a student-teacher named Dallas Till had sexually assaulted a Morton East High School student referred to as "Victim 1."  District 201 terminated Till and promised Victim 1's parents that Till would never become a teacher, but District 201 did not report Till to the authorities or prevent him from getting his teaching license.

- In Fall 2004 (two years after the 2001-2002 period), Till – then working as a full-time teacher at Elmwood Park High School – began "grooming" Doe for a sexual relationship.  In April 2007 (almost five years after the 2001-2002 period), Till and Doe began a sexual relationship that lasted until 2009.

The Policy applies to "damages because of 'Bodily Injury' . . . caused by an 'Occurrence' … only if the 'Occurrence'" – i.e., "an accident"  –  "occurs during the policy period[.]"  "The general rule, and it is the rule followed in Illinois, is that an 'accident' does not 'occur,' within the

meaning of a policy of liability insurance, until the person claiming against the insured is injured." *Rozenfeld v. Med. Protective Co.*, 73 F.3d 154, 156 (7th Cir. 1996); *see also Great Am. Ins. Co. v. Tinley Park Recreation Comm'n*, 124 Ill. App. 2d 19, 21, 259 N.E.2d 867, 868 (Ill. App. Ct. 1970) ("an accident cannot be said to have occurred until all the factors of which it is comprised combine to produce the force which inflicts injury").

Jane Doe's lawsuit did not allege "Bodily Injury" caused by an "Occurrence" that took place during the 2001-2002 policy period. Accordingly, Westport has no duty to defend or indemnify District 201 under the Policy. Likewise, Westport has no duty to reimburse CLIC for any amounts incurred to defend or settle Jane Doe's lawsuit.

### SECOND AFFIRMATIVE DEFENSE
**(No "Accident" / Intentional Acts Exclusion)**

2. The Policy only applies to "Bodily Injury" caused by "an accident[.]" In addition, the Policy contains an Intentional Acts exclusion which bars coverage for "Bodily Injury" "expected or intended from the standpoint of the 'Insured'" or "arising from any dishonest, fraudulent or criminal act of any 'Insured.'"

Jane Doe's lawsuit alleges that District 201 learned in Spring 2002 that Till had sexually assaulted a student and promised the victim's parents that Till would "never be able to work as a teacher again." However, District 201 did not report the "known groomer and abuser" Till to the authorities "in violation of the Illinois Abused and Neglected Child Reporting Act," which allowed Till to sexually abuse Jane Doe starting in April 2007. Jane Doe's "Bodily Injury" was not caused by an "accident" and was "expected or intended from the standpoint of the 'Insured[.]'" Jane Doe's "Bodily Injury" arose from District 201's dishonesty in promising Victim 1's parents that District 201 would make sure Till could not abuse other students in the future.

Accordingly, Westport has no duty to defend or indemnify District 201 under the Policy. Likewise, Westport has no duty to reimburse CLIC for any amounts incurred to defend or settle Jane Doe's lawsuit.

### THIRD AFFIRMATIVE DEFENSE
**(Late Notice)**

3.     The Policy states that the "'Insured' has certain duties if a claim or suit is brought against an 'Insured' or in the event of an 'Occurrence'" that "may result in a claim under this Policy" or that involves "[r]ape and/or serious physical assault." "In these situations, regardless of perceived liability, an 'Insured' must notify us in writing and include" "[r]easonable information about time, place and circumstances" and "[c]opies of demands, notices, summons or other legal documents an 'Insured' has received."

District 201 claims that the "Occurrence" at issue in Jane Doe's lawsuit is District 201's failure to report Till to the authorities in Spring 2002 after learning that Till had sexually assaulted Victim 1. District 201 did not report that Till had sexually assaulted of Victim 1 until December 15, 2023, when District 201 notified Westport that Victim 1 had brought her own lawsuit against District 201. Thus, District 201 waited over 21 years to provide notice of a purported "Occurrence" involving "rape and/or serious physical assault" of Victim 1.

In addition, Jane Doe named District 201 in her First Amended Complaint filed February 1, 2023. Counsel for District 201 filed their appearance on April 18, 2023. However, District 201 did not provide notice of Jane Doe's lawsuit until September 26, 2024, which is: (1) roughly 1.5 years after District 201 got notice of Jane Doe's lawsuit; and (2) over sixth months after District 201 gave notice of Jane Doe's lawsuit to the insurer on the risk in the 2004-2005 policy period.

District 201 violated the Policy's notice condition by failing to provide timely notice of the purported "Occurrence" and by failing to provide timely notice of Jane Doe's lawsuit.

Accordingly, Westport has no duty to defend or indemnify District 201 under the Policy. Likewise, Westport has no duty to reimburse CLIC for any amounts incurred to defend or settle Jane Doe's lawsuit.

### FOURTH AFFIRMATIVE DEFENSE
### (No Coverage for Voluntary Payments)

4.  The Policy provides that "[u]nless having our express written consent, or acting at their own cost, an 'Insured' will not voluntarily: 1. make a payment; 2. assume any obligation; or 3. incur any expense. The only exception shall be for first aid." District 201 settled with Doe on or about December 5, 2024, prior to Westport issuing any coverage position, and did so without requesting or obtaining Westport's consent to that settlement. Accordingly, District 201 has violated the Policy's voluntary payments condition and forfeited any claim to coverage.

### FIFTH AFFIRMATIVE DEFENSE
### (Estoppel, Laches, and Equitable Principles)

5.  Any recovery by District 201 and/or CLIC in connection with Jane Doe's lawsuit may be barred by the doctrines of waiver, estoppel, mitigation, unclean hands, ratification, and/or laches, as well as other equitable doctrines and statutory or contractual limitations periods.

### SIXTH AFFIRMATIVE DEFENSE
### (A Bona Fide Coverage Dispute Precludes Penalties Under 215 ILCS 5/155)

6.  Under 215 ILCS 5/155(1), an insured may recover attorneys' fees and penalties where an insurer delays payment or otherwise been vexatious and unreasonable. However, where a bona fide dispute exists concerning the insurer's obligations under the relevant policy, relief under Section 155 is not available. Here, there is a bona fide dispute about Westport's obligations under the Policy. Accordingly, neither District 201 nor any other party is entitled to statutory relief from Westport under 215 ILCS 5/155(1).

## SEVENTH AFFIRMATIVE DEFENSE
### (No Breach of Duty, No Vexatious or Unreasonable Conduct, or Delay in Payment)

7.      Under 215 ILCS 5/155(1), an insured may recover attorneys' fees and penalties where an insurer delays payment or otherwise been vexatious and unreasonable.  Here, Westport has not been vexatious or unreasonable in any way.  The Policy's Loss Payment provision states that "[a]fter we have been determined liable under this Policy, we will reimburse any insured promptly for all payments made over the 'Self Insured Retention.'"  The Policy also defines the "Self Insured Retention" – here $300,000 – as the "sum … which the 'Insured' shall pay'" in the defense or settlement of "Suits" and which "shall be paid by the 'Insured' prior to any obligation on the part of [Westport]."

Westport was notified of Jane Doe's lawsuit on September 26, 2024, when District 201's defense costs were no more than $189,000 and within the "Self Insured Retention."  On or about December 5, 2024, District 201 and CLIC settled Jane Doe's lawsuit for $400,000 without any notice to, or request for consent from, Westport.  On January 23, 2025, Westport sent a letter disclaiming coverage for Jane Doe's lawsuit, which Westport did not know had settled by that time.  In that letter, Westport asked District 201 to advise if it disagreed with Westport's disclaimer so that Westport could determine whether to pursue a ruling as to its coverage obligations.

On or about June 6, 2025, counsel for CLIC and District 201 reported the settlement of Jane Doe's lawsuit and asked whether Westport would pay some portion of the $289,000 CLIC seeks in this action.  Westport advised that it would not reimburse CLIC in whole or in part and asked counsel if the instant dispute should be made part of an arbitration that was already moving forward between the Westport and District 201 relative to Victim 1's lawsuit against District 201.  Thereafter, CLIC filed this action in the Circuit Court of Cook County.

Westport has not breached any duty to District 201 relative to Jane Doe's lawsuit. Nor is Westport estopped from asserting any coverage defenses or liable for any extra-contractual damages, including under 215 ILCS 5/155.

## EIGHTH AFFIRMATIVE DEFENSE
### (Additional Defenses)

8.      Westport may have additional defenses that arise in the future or of which it is not presently aware and hereby reserves the right to assert them by amendment to this answer.

## PRAYER FOR RELIEF

WHEREFORE, Westport respectfully requests this Court to enter judgment in its favor as follows:

1. Declaring that Westport has no duty to defend or indemnify under the Policy relative to Jane Doe's lawsuit;

2. Dismissing each of the Plaintiff's claims against Westport in their entirety with prejudice; and

3. For such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS AGAINST PLAINTIFF

Westport Insurance Corporation ("Westport"), as the Successor-in-Interest to Coregis Insurance Company ("Coregis"), by and through its attorneys, brings these Counterclaims against Plaintiff Collective Liability Insurance Cooperative ("CLIC"), as subrogee of J. Sterling Morton High School District 201 ("District 201"), and in support alleges as follows:

## NATURE OF THE CASE

1.      This is an insurance coverage dispute wherein Westport seeks a declaration that Westport has no duty to defend, indemnify, or reimburse costs incurred by CLIC under Policy No. 651-007479 effective July 1, 2001 to July 1, 2002 (the "Policy") in connection with two underlying lawsuits (collectively, the "Underlying Lawsuits") arising out of District 201's "willful and wanton" failure to alert authorities in Spring 2002 (during the 2001-2002 policy period) that student-teacher Dallas Till had sexually assaulted a sixteen year old student (hereafter, "Victim 1") at Morton East High School ("MEHS"), thus allowing Till to become a full-time teacher at another high school and sexually abuse other students years later.

2.      The Underlying Lawsuits were each filed in the Circuit Court of Cook County and include: (1) the lawsuit filed by Victim 1 captioned *Doe v. J. Sterling Morton High School District 201, et al.* (Case No. 2023 L 004471) (the "Victim 1 Lawsuit"); and (2) the lawsuit put at issue in CLIC's Complaint in this action, which was filed by one of Till's later victims ("Jane Doe") and captioned *Doe v. J. Sterling Morton High School District 201, et al.* (Case No. 2021 L 006363) (the "Jane Doe Lawsuit").

3.      The District's liability for the "willful and wanton" failure to report a "known groomer and abuser" to the authorities in Spring 2002 is not covered under the Policy for several reasons.

4. First, just as District 201 failed to alert the authorities when it was told of Till's criminal acts in Spring 2002, the District did not report the "known groomer and abuser" to Westport until December 2023, after Victim 1 filed suit. District 201's failure to report Till's sexual abuse of Victim 1 for over 20 years is a blatant violation of the Policy's notice conditions, as is District 201's failure to provide notice of either of the Underlying Lawsuits for over a year after learning of them.

5. Furthermore, the Policy only covers "Bodily Injury" caused by an accidental "Occurrence" that takes place during the policy period July 1, 2001 to July 1, 2002. The "Occurrence" by which coverage is triggered is the "accident" or event that directly caused the "Bodily Injury" to occur or "come into existence." Jane Doe was sexually abused by Till from 2007-2009, roughly five years after the 2001-2002 policy period. Accordingly, Jane Doe's "Bodily Injury" was not caused by an "Occurrence" that took place during the 2001-2002 period.

6. In addition, the Policy does not cover District 201's liability for failing to report a "known groomer and abuser" to the authorities. After learning that Till had sexually assaulted Victim 1 in Spring 2002, District 201 promised the girl's parents that Till would never become a teacher. Thus, District 201 understood that Till was a predator, such that his subsequent abuse of Jane Doe and other victims is beyond the Policy's coverage in any event.

## PARTIES

7. Westport is organized under the laws of Missouri with its principal place of business in New York, New York. Westport is authorized to transact the business of insurance in the State of Illinois.

8. Upon information and belief, CLIC is a cooperative organization organized under the laws of the State of Illinois with its principal place of business in Illinois.

15

9.     Upon information and belief, CLIC paid to defend and settle the Underlying Lawsuits on behalf of District 201 and is the subrogee of District 201 with respect to these claims to coverage under the Policy.

## JURISDICTION & VENUE

10.     Westport brings these Counterclaims seeking a declaration that Westport has no duty to indemnify Plaintiff with respect to the Underlying Lawsuits.

11.     CLIC has demanded that Westport reimburse $94,000 that CLIC paid to settle the Victim 1 Lawsuit and $289,000 that CLIC paid to settle the Jane Doe Lawsuit.

12.     There is an actual, ripe, justiciable controversy between the parties concerning insurance coverage for the Underlying Lawsuits.

13.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between each of the parties and because the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

14.     This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, to resolve the parties' dispute regarding the availability of coverage under the Policy.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

**A.     In Spring 2002, District 201 Officials Dismissed Till From a Student-Teaching Position After Learning He Sexually Assaulted Victim 1**

16.     In Spring 2002 (during the 2001-2002 period), Dallas Till was getting a degree in education from Elmhurst University and training as a student-teacher at Morton East High School ("MEHS"), which is part of District 201.  (See District 201's Br. in Supp. of its Motion for

Summary Judgment in the Jane Doe Lawsuit, attached as Ex. A at 1-2; see also Jane Doe's Resp. to District 201's Mot. for Summary Judgment, attached as Ex. B at 2; Victim 1's First Amended Complaint, attached as Ex. C; Jane Doe's Second Amended Complaint, attached as Ex. D).

17.     Till was the physical education teacher of Victim 1, a sixteen year old female student at MEHS. Early in the Spring 2002, Till began "grooming" Victim 1 by showing interest in her, complimenting her, sharing personal details, and having sexually explicit chats online. (Ex. B at ¶¶ 7-10).

18.     Around this time, Till also began "grooming" Victim 1's younger sister through their involvement in the MEHS baseball team, often signing hall passes so the sister could arrive late to class with an excuse. *Id.* at ¶¶ 11-12, 14.

19.     In late April or early May of 2002, Till invited Victim 1 to his car in the MEHS parking lot and pinned her against the car while aroused. Victim 1, feeling unsafe, left the parking lot and went home. *Id.* at ¶ 13.

20.     Soon after, a teacher called the girls' parents to report that Victim 1's sister was chronically late to class and forging hall passes. Understanding that this was related to Till, Victim 1 told her mom and stepfather about Till's grooming and the sexual assault in the school parking lot. *Id.* at ¶¶ 15-17.

21.     Victim 1's father – who was then a teacher at MEHS – reported this incident to MEHS Assistant Principal Hector Garcia. *Id.* at ¶ 17.

22.     Days later, Victim 1 met with MEHS' Athletic Director and Dean of Students, described her interactions with Till, and gave the names of two witnesses. *Id.* at ¶ 18.

23.     At the same time, Victim 1's parents met with MEHS Principal Manuel Isquierdo and Assistant Principal Garcia, who told the concerned parents that "Till had been fired, that Till's

college had been notified of his conduct, and that Till would never be allowed to teach again." *Id.* at ¶¶ 19-20.

24.     However, MEHS administrators told other faculty that Till had been terminated for forging hall passes, rather than sexually assaulting Victim 1.  *Id.* at ¶¶ 22-25.

25.     Despite Till being terminated, Elmhurst University got "sign off" from MEHS that Till had completed his student-teaching requirements and advised regulators that Till had met the requirements for a teaching license.  *Id.* at ¶ 26.

26.     District 201 never reported Till's conduct to Elmhurst University or the authorities, despite its mandate to do so under the Illinois Abused and Neglected Child Reporting Act, 325 Ill. Comp. Stat. 5/1 *et seq.* (the "ANCRA").  *Id.* at ¶¶ 27-29.

**B.      Till Went On to Become a Teacher and Sexually Abuse Jane Doe and Other Students For Years**

27.     In Fall 2002 (outside of the 2001-2002 period), Till began working as a full-time teacher at Elmwood Park High School ("EPHS") in an unrelated school district.  *Id.* at ¶ 30.

28.     Thereafter, Till began grooming and sexually abusing EPHS students.[1]  (See Jane Doe's Response in Opp. to Elmwood Park Community Unit School District 401's Mot. for Summary Judgment, attached as Ex. E at ¶¶ 6-9).

29.     In Fall 2004 (two years after the 2001-2002 period), Jane Doe enrolled at EPHS and met Till through the girls' basketball team.  *Id.* at ¶¶ 10-11.

30.     In April 2007, after "grooming" Jane Doe throughout her freshman and sophomore years, Till began sexually abusing Jane Doe.  *Id.* at ¶¶ 13-14.

---

[1] District 201 was named in a second lawsuit relating to sexual abuse by Till at EPHS captioned *Doe v. Elmwood Park Community School Dist. 401 et al.* (Case No. 2023 L 4471; Cir. Ct. of Cook County).  District 201 also sought coverage from Westport for this additional lawsuit, but amounts incurred to defend and settle that case are within the Policy's $300,000 "Self Insured Retention."  Accordingly, that lawsuit is not at issue in this coverage action.

31.     Till continued to sexually abuse Jane Doe through her graduation from EPHS in May 2008, at which point Jane Doe had already reached eighteen years of age and been living with Till in his home for several months.  *Id.* at ¶¶ 32-33.

**C.      The Underlying Lawsuits**

**1.      Jane Doe Filed Suit Against District 201 in February 2023**

32.     In June 2021, Jane Doe filed suit against Elmwood Park Community Unit School District 401 and Till.

33.     On February 1, 2023, Jane Doe filed a First Amended Complaint adding District 201 as a Defendant based on its "willful and wanton" conduct in "conceal[ing] from the proper authorities, including the Department of Children and Family Services, Till's sexual grooming and abuse of [Victim 1]," even though District 201 "acknowledged and immediately terminated Till's student teaching" on that basis, and concealing "Till's grooming and assault" of Victim 1 from administrators at Jane Doe's high school.

34.     On April 18, 2023, defense counsel appeared for District 201.

35.     On October 16, 2023, Jane Doe filed her operative Second Amended Complaint. Ex. D.

36.     On November 18, 2024, the trial court denied District 201's Motion for Summary Judgment, finding material questions of fact regarding whether District 201 showed "a conscious disregard" for the safety of Jane Doe and other students by failing to report Till to the authorities and prevent him from becoming a teacher.   (See Mem. Op. and Order attached as Ex. F).

37.     On or about December 5, 2024, District 201 settled with Jane Doe for $400,000 and the Jane Doe Lawsuit was dismissed with prejudice.

### 2. Victim 1 Filed Suit Against the District in May 2023

38.     On May 1, 2023, Victim 1 filed her lawsuit naming the District, Till, and Elmhurst University.

39.     In her Complaint, Victim 1 alleged that District 201 was liable for its "willful and wanton" failure to prevent or report Till's grooming and sexual assault pursuant to the ANCRA, despite MEHS Principal Isquierdo and Assistant Principal Garcia acknowledging Till's behavior and telling Victim 1's parents that Till "had been removed from the school as a student teacher and [] would never be able to work as a teacher again."

40.     Defense counsel filed an appearance on behalf of District 201 on June 15, 2023.

41.     On November 27, 2023, Victim 1 filed her operative First Amended Complaint. Ex. C.

42.     Upon information and belief, on or about June 6, 2025, District 201 settled with Victim 1 for $300,000.

43.     The Victim 1 Lawsuit was dismissed with prejudice on July 28, 2025.

### D.     The 2001-2002 Policy

44.     Westport's predecessor, Coregis Insurance Company, issued a "Public Entity Pooled Program" Policy No. 651-007479 to CLIC for the policy period July 1, 2001 to July 1, 2002.  The Policy is endorsed to include District 201 as a Named Insured. (The policy form, renewal certificates, and endorsements which together make the Policy are attached as Ex. G).

45.     The Policy provides general liability coverage in excess of a "Self Insured Retention" in the amount of $300,000 Each Occurrence and $2,497,241 in the aggregate and is subject to a $1 million Each Occurrence limit and a $3 million General Aggregate limit.

46.     The Policy's Insuring Agreement states in relevant part:

**SECTION 1 – GENERAL LIABILITY AND LAW ENFORCEMENT LIABILITY:**

    **1.**    **Coverage**

        **a.**    **General Liability**

We will pay all sums in excess of the "Self Insured Retention" limit stated in the Policy Declarations that the "Insured" becomes legally obligated to pay as damages because of "Bodily Injury" or "Property Damage" caused by an "Occurrence", or "Advertising Injury" or "Personal Injury" caused by an offense to which this insurance applies. The amount we will pay in damages is limited as described in Section 2 B. below. The above stated coverage applies only if the "Occurrence" or offense occurs during the policy period and within the Policy Territory as set forth in the General Policy Provisions. This General Liability Coverage Part does not apply if the "Occurrence" or offense arises as a result of "Law Enforcement Activity."

\*     \*     \*

        **d.**    **Liability Exclusions**

This insurance does not apply to any claim based upon, arising out of or attributable to:

        **1.**    **Intentional Acts**

    a.    **"Bodily Injury"**, **"Property Damage"**, "**Personal Injury"**, or **"Advertising Injury"** arising from any dishonest, fraudulent or criminal act of any **"Insured"**.

    b.    **"Bodily Injury"** or **"Property Damage"** expected or intended from the standpoint of the **"Insured"**, unless the **"Bodily Injury"** or **"Property Damage"** results from actions taken to enforce the law or to protect persons or property.

47.    The Policy's relevant conditions include:

**SECTION 1 – COMMON POLICY CONDITIONS**

\*     \*     \*

    **12.**    **An "Insured's" Duties in the Event of an "Occurrence", Claim or "Suit"**

An **"Insured"** has certain duties if a claim or **"Suit"** is brought against an **"Insured"** or in the event of an **"Occurrence"** that:

a.      May result in a claim under this Policy; or

b.      Involves any of the following:

*     *     *

6.      Rape and/or serious physical assault;

In these situations, regardless of perceived liability, an **"Insured"** must notify us in writing and include:

1.      Reasonable information about time, place and circumstances; and

2.      Copies of demands, notices, summons or other legal documents an **"Insured"** has received.

An **"Insured"** must also:

1.      Cooperate with our investigation, settlement or defense; and

2.      Help us, if we ask, to enforce any right against any one or any organization that may be liable to an "Insured" because of a covered injury or damage.

Unless having our express written consent, or acting at their own cost, an **"Insured"** will not voluntarily:

1.      Make a payment;

2.      Assume any obligation; or

3.      Incur any expense.

The only exception shall be to render first aid.

*     *     *

**24.   Policy Period**

We will pay only for loss that you sustain occurring during the Policy Period shown in the Declarations of this Policy.

*     *     *

48.     The Policy's relevant definitions include:

### SECTION 3 – COMMON POLICY DEFINITIONS

\*          \*          \*

9.     **"Bodily Injury"** means bodily injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation, sustained by a person, including death resulting from any of these at any time.[2]

10.     **"Covered Cause of Loss"** means direct physical loss that is either specifically designated or not specifically excluded anywhere in this Policy or in the endorsements attached.

\*          \*          \*

19.     **"Insured"** means:

    a.     You;

    b.     Any commission, board, authority, administrative department, public safety department or other similar unit operated by you and under your jurisdiction;

\*          \*          \*

29.     **"Occurrence"** means an accident caused by a **"Covered Cause of Loss"**, including continuous or repeated exposure to substantially the same general harmful conditions.

\*          \*          \*

38.     **"Self Insured Retention"** means that sum or sums indicated in the Declarations or Schedule of **"Self Insured Retentions"** which the "Insured" shall pay:

    a.     For settlement or satisfaction of claims, **"Suits"** or  judgments after making deductions for all salvages and recoveries; plus

    b.     **"Allocated Claims Expenses".**

The **"Self Insured Retention"** shall be paid by the **"Insured"** prior to any obligation on the part of this Company. The **"Self Insured Retention"** shall be funded by an **"Annual Aggregate Loss Fund"** administered by a **"Third Party Administrator."**

---

[2] See General Change Endorsement.

### E. District 201's Notice to Westport of the Victim 1 Lawsuit

49.     On December 15, 2023, CLIC's third-party administrator gave notice to Westport of the Victim 1 Lawsuit and provided a copy of Victim 1's First Amended Complaint.  The notice states that District 201 learned of Victim 1's claim on October 19, 2022.  (Notice attached as Ex. H).

50.     On July 27, 2024, Westport issued a letter disclaiming coverage under the Policy, citing allegations that District 201 was aware of Till's misconduct and was liable for its "willful and wanton" failure to report Till to the authorities.  Westport reserved the right to raise additional defenses and requested that District 201 advise if it disagreed with Westport's position so that Westport could consider whether to seek a formal resolution.  (Westport's July 27, 2024 letter is attached as Ex. I).

51.     On October 11, 2024, counsel for District 201 sent a letter asking Westport to reconsider its denial of coverage.  (District 201's October 11, 2024 letter is attached as Ex. J).

52.     On November 19, 2024, counsel for District 201 sent a letter demanding Westport defend the Victim 1 Lawsuit.  (District 201's November 19, 2024 letter is attached as Ex. K).

53.     On November 21, 2024, Westport's counsel reiterated Westport's denial of coverage based on District 201's "willful and wanton" failure to report Till to the authorities in Spring 2002 despite promising Victim 1's parents that Till would never become a teacher. (Westport's November 21, 2024 letter is attached as Ex. L).

54.     In addition, Westport noted that  the Policy required District 201 to provide notice of any "Occurrence" involving "rape and/or serious physical assault" regardless of perceived liability, such that District 201 had forfeited any right to coverage by waiting over 20 years to provide notice of Till's sexual assault on Victim 1.

55.     At the conclusion of the letter, Westport demanded arbitration pursuant to the Policy.  However, the parties have recently elected to forego arbitration in light of CLIC filing this action.

**F.     District 201's Tender of the Jane Doe Lawsuit**

56.     On September 26, 2024, CLIC's third-party administrator notified Westport of the Jane Doe Lawsuit that was first filed against District 201 on February 1, 2023.  (Notice attached as Ex. M).

57.     In addition to Jane Doe's Second Amended Complaint, the notice attached a disclaimer letter dated March 11, 2024 from Selective Insurance Company of America ("Selective"), CLIC's insurer for the 2004-2005 period. (Selective's March 11, 2024 disclaimer is attached as Exhibit N).  CLIC advised that Westport was being placed "on notice based on our receipt of the attached letter from Selective."

58.     In its denial letter, Selective advised District 201 that there was no coverage for the Jane Doe Lawsuit under the 2004-2005 Selective Policy because, _under the terms of the 2004-2005 Selective Policy:_ (1) any "occurrence" involving "sexual misconduct" by Till would be "deemed" to take place in Spring 2002, when Till committed his first act of "sexual misconduct" against any person (_i.e._, Victim 1); and (2) there was no coverage for Jane Doe's claims because they arose from an "occurrence" that, _under the Selective Policy's terms_, would be "deemed" to have taken place prior to Selective's 2004-2005 policy period.

59.     A week after giving notice to Westport, District 201 filed its Reply in Support of its Motion for Summary Judgment in the Jane Doe Lawsuit.

60.     On December 5, 2024, District 201 settled the Jane Doe Lawsuit for $400,000 without giving notice or requesting consent from Westport.

61.     On January 23, 2025, Westport issued a letter disclaiming coverage under the Policy because: (1) the Jane Doe Lawsuit did not involve "Bodily Injury" caused by an "Occurrence" taking place during the 2001-2002 period because Jane Doe was first abused by Till from 2007-2009; (2) the "deemer" clause of the 2004-2005 Selective Policy did not create coverage under the Westport Policy issued for 2001-2002; (3) the Intentional Acts exclusion precluded coverage; and (4) District 201 waited more than 20 years to report the purported "Occurrence" at issue (*i.e.*, Till's abuse of Victim 1 in Spring 2002).  (Westport's January 23, 2025 letter is attached as Ex. O).

62.     On or about June 6, 2025, counsel for CLIC and District 201 advised that the Underlying Lawsuits had settled and that CLIC was seeking indemnity in the amount of $94,000 for the Victim 1 settlement and $289,000 for the Jane Doe settlement, which represent the amounts paid in excess of separate $300,000 "Self Insured Retentions" for each claim.

## CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT
**(No Duty to Indemnify – No "Occurrence" / "Bodily Injury" During the Policy Period)**
**(Jane Doe Lawsuit)**

63.     Westport restates and realleges Paragraphs 1 through 62 of its Counterclaims as though fully restated and realleged herein in their entirety.

64.     Subject to its terms, conditions, and exclusions, the Policy covers "damages because of 'Bodily Injury' caused by an 'Occurrence'" to which the Policy applies and states that "coverage applies only if the 'Occurrence' … occurs during the policy period."

65.     The policy period is July 1, 2001 to July 1, 2002.

66.     The Policy defines "Bodily Injury" to include "bodily injury … mental injury and humiliation."

67. An "Occurrence" is defined as "an accident caused by a 'Covered Cause of Loss', including continuous or repeated exposure to substantially the same general harmful conditions."

68. A "Covered Cause of Loss" means "direct physical loss" that is not specifically addressed or excluded elsewhere in the Policy.

69. "The general rule, and it is the rule followed in Illinois, is that an 'accident' does not 'occur,' … until the person claiming against the insured is injured." *Rozenfeld v. Med. Protective Co.*, 73 F.3d 154, 156 (7th Cir. 1996) (Illinois law).

70. The Jane Doe Lawsuit alleges that Jane Doe met Till in Fall 2004 (two years after the 2001-2002 period), and that Till first sexually abused Jane Doe in April 2007 (almost five years after the 2001-2002 period).

71. Jane Doe's Lawsuit does not seek to hold District 201 liable for any "Occurrence" that caused "Bodily Injury" to Jane Doe during the 2001-2002 period. Instead, Jane Doe alleges District 201's failure to report Till to the authorities in Spring 2002 allowed Till to sexually abuse Jane Doe nearly five years later.

72. Accordingly, the Jane Doe Lawsuit does not present liability for any "Bodily Injury" or "Occurrence" to which the Policy applies and Westport has no duty to indemnify the settlement of the Jane Doe Lawsuit.

WHEREFORE, Defendant and Counter-Plaintiff, WESTPORT INSURANCE CORPORATION, as Successor-in-Interest to COREGIS INSURANCE COMPANY, prays for a declaratory judgment finding that it has no obligation under the Policy to indemnify Plaintiff, COLLECTIVE LIABILITY INSURANCE COOPERATIVE, as Subrogee of J. STERLING MORTON HIGH SCHOOL DISTRICT 201 for the Jane Doe Lawsuit, enter judgment in its favor and against Plaintiff, and grant such other relief as this Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT
### (No Duty to Indemnify – No "Accident" / Intentional Acts Exclusion)
### (Both Underlying Lawsuits)

73.     Westport restates and realleges Paragraphs 1 through 72 of its Counterclaims as though fully restated and realleged herein in their entirety.

74.     The Policy defines an "Occurrence" as "an accident."

75.     Under the Intentional Acts exclusion, there is no coverage for "Bodily Injury" "expected or intended from the standpoint of the 'Insured.'"

76.     There is also no coverage for "Bodily Injury" "arising from any dishonest, fraudulent or criminal act of any 'Insured."

77.     Victim 1 and Jane Doe alleged that District 201 is liable for the "willful and wanton" failure to report a "known groomer and abuser" to the authorities in Spring 2002 in violation of the ANCRA.

77.     Both victims also alleged that MEHS Principal Isquierdo and Assistant Principal Garcia promised Victim 1's parents that Till had been immediately terminated and would "never be able to work as a teacher again."

78.     Till's immediate termination and District 201's promise to report him demonstrates that District 201 knew Till was a threat to children in Spring 2002.

79.     However, District 201 acted with "conscious disregard" by breaking that promise, violating its statutory duty to report Till to the authorities, and even failing to alert Elmhurst University or his future employer that Till could not be allowed to become a licensed teacher.

80.     District 201's liability for failing to report Till to the authorities is not "an accident." The "Bodily Injury" that flowed from District 201's failure to report Till despite promising to do so is also subject to the Intentional Acts exclusion.

81. Accordingly, Westport has no duty to indemnify the settlements reached in connection with the Underlying Lawsuits.

WHEREFORE, Defendant and Counter-Plaintiff, WESTPORT INSURANCE CORPORATION, as Successor-in-Interest to COREGIS INSURANCE COMPANY, prays for a declaratory judgment finding that it has no obligation under the Policy to indemnify Plaintiff, COLLECTIVE LIABILITY INSURANCE COOPERATIVE, as Subrogee of J. STERLING MORTON HIGH SCHOOL DISTRICT 201, for the Underlying Lawsuits, enter judgment in its favor and against Plaintiff, and grant such other relief as this Court deems just and proper.

**COUNT III – DECLARATORY JUDGMENT**
**(No Duty to Indemnify – Late Notice)**
**(Both Underlying Lawsuits)**

82. Westport restates and realleges Paragraphs 1 through 81 of its Counterclaims as though fully restated and realleged herein in their entirety.

83. The Policy requires District 201 to notify Westport of an "Occurrence" or offense that may result in a claim and to "immediately" notify Westport of an "Occurrence" that involves "rape and/or serious physical assault," regardless of perceived liability.

84. District 201 was also required to provide timely notice to Westport "if a claim or 'Suit' is brought" and forward pleadings and related documentation.

85. District 201 learned that Till had sexually assaulted Victim 1 in Spring 2002 and immediately terminated Till's student-teaching assignment on that basis.

86. District 201 did not notify Westport or the authorities at that time, which allowed Till to abuse Jane Doe and other girls years later as a licensed teacher at EPHS.

87. On or about October 19, 2022, District 201 learned that Victim 1 was bringing a claim.

88. District 201 was sued by Victim 1 on May 1, 2023.

89. On December 15, 2023, District 201 first gave Westport notice of the purported "Occurrence" at issue when it tendered Victim 1's Amended Complaint.

90. That notice came over 21 years after District 201 terminated Till in Spring 2002 and over a year after District 201 learned that Victim 1 was bringing a claim.

91. On September 26, 2024, District 201 first gave notice of the Jane Doe Lawsuit when it tendered Jane Doe's Second Amended Complaint.

92. Jane Doe's Second Amended Complaint was filed on October 16, 2023, and District 201 was named in Jane Doe's First Amended Complaint on February 1, 2023.

93. District 201's notice of the Jane Doe Lawsuit came over 22 years after District 201 terminated Till in Spring 2002 and over 1.5 years after Jane Doe first named District 201.

94. District 201's notice of the Jane Doe Lawsuit also came roughly seven months after District 201 notified its 2004-2005 insurer of the Jane Doe Lawsuit on February 16, 2024, and just one week before District 201 finished briefing its Motion for Summary Judgment in that case.

95. District 201's failure to provide notice of a purported "Occurrence" involving sexual abuse of a minor for over 21 years violated the Policy's notice conditions.

96. District 201's failure to provide notice of Victim 1's claim for over a year violated the Policy's notice conditions.

97. District 201's failure to provide notice of the Jane Doe Lawsuit for over 1.5 years violated the Policy's notice conditions.

98. Accordingly, Westport has no duty to indemnify the settlements reached in connection with the Underlying Lawsuits.

WHEREFORE, Defendant and Counter-Plaintiff, WESTPORT INSURANCE CORPORATION, as Successor-in-Interest to COREGIS INSURANCE COMPANY, prays for a declaratory judgment finding that it has no obligation under the Policy to indemnify Plaintiff, COLLECTIVE LIABILITY INSURANCE COOPERATIVE, as Subrogee of J. STERLING MORTON HIGH SCHOOL DISTRICT 201, for the Underlying Lawsuits, enter judgment in its favor and against Plaintiff, and grant such other relief as this Court deems just and proper.

**COUNT IV – DECLARATORY JUDGMENT**
**(No Duty to Indemnify – No Coverage for Voluntary Payments)**
**(Jane Doe Lawsuit)**

99.     Westport restates and realleges Paragraphs 1 through 98 of its Counterclaims as though fully restated and realleged herein in their entirety.

100.     The Policy provides that "[u]nless having our express written consent, or acting at their own cost, an 'Insured' will not voluntarily: 1. Make a payment; 2. Assume any obligation; or 3. Incur any expense."

101.     On September 26, 2024, more than 1.5 years after District 201 was first named as a defendant, and just a week before it concluded briefing its Motion for Summary Judgment, District 201 notified Westport of the Jane Doe Lawsuit.

102.     District 201 by that time had incurred the vast majority of its $189,000 in defense costs without any notice or request for consent from Westport.

103.     On November 18, 2024, the trial court denied District 201's Motion for Summary Judgment in the Jane Doe Lawsuit, finding material questions of fact regarding whether District 201 showed "a conscious disregard" for the safety of Jane Doe and other students by failing to report Till to the authorities and prevent him from becoming a teacher. *See* Ex. F.

104. On our about December 5, 2024, District 201 settled the Jane Doe Lawsuit for $400,000, bringing the total loss to $589,000, including $289,000 in excess of the Policy's $300,000 "Self Insured Retention."

105. At no point did District 201 advise Westport of this proposed settlement or seek Westport's consent for the same, despite the fact that Westport had not yet advised District 201 of its coverage position.

106. District 201's $400,000 settlement of the Jane Doe Lawsuit is not covered under the Policy for myriad reasons as explained above.

107. However, it would not be covered for the additional reason that it was reached without Westport's consent and represents a "voluntary payment" under the Policy.

108. Accordingly, Westport owes no duty to indemnify District 201 in connection with the Jane Doe Lawsuit.

WHEREFORE, Defendant and Counter-Plaintiff, WESTPORT INSURANCE CORPORATION, as Successor-in-Interest to COREGIS INSURANCE COMPANY, prays for a declaratory judgment finding that it has no obligation under the Policy to indemnify Plaintiff, COLLECTIVE LIABILITY INSURANCE COOPERATIVE, as Subrogee of J. STERLING MORTON HIGH SCHOOL DISTRICT 201, for the Jane Doe Lawsuit, enter judgment in its favor and against Plaintiff, and grant such other relief as this Court deems just and proper.

Dated: November 3, 2025                    Respectfully submitted,


/s/     Kevin F. Harris
Adam H. Fleischer
Kevin F. Harris
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Telephone: (312) 762-3130

Telephone:  (312) 762-3125
Email:  afleischer@batescarey.com
Email:  kharris@batescarey.com

*Counsel for Westport Insurance Corporation, Successor-in-Interest to Coregis Insurance Company*

8819981